Eva M. Weiler (SBN: 233942)
eweiler@shb.com
Paulina N. Tran (SBN: 337946)
ptran@shb.com
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California  92614-2546
Telephone:   949-475-1500
Facsimile:    949-475-0016

Attorneys for Defendants
sanofi-aventis U.S. LLC and
Sanofi US Services Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL WELLS, | CASE NO.: 3:23-cv-02134-JLS-BLM |
| Plaintiff, | Judge: Hon. Janis L. Sammartino |
| vs. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |
| SANOFI-AVENTIS U.S. LLC, et al., | |
| Defendants. | Date: 2/22/2024<br>Time: 1:30 PM<br>Judge: Hon. Janis L. Sammartino |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

LITIGATION BACKGROUND AND PRIOR RULINGS................................2

ARGUMENT AND AUTHORITIES ...................................................................5

I.  ALLOWING MS. WELLS TO AMEND HER INJURY DEFINITION WOULD NEGATE THE MDL COURT'S WORK ............................................6

    A.    The MDL Court's Rulings Should Not Be Disturbed ......................6

    B.    The MDL Court's Ruling Was Not Clearly Erroneous or Manifestly Unjust ................................................................................7

II. AMENDMENT SHOULD NOT BE PERMITTED UNDER EITHER RULE 15 OR RULE 16................................................................................11

III. ALLOWING AMENDMENT WOULD BE FUTILE ............................13

CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Anderson v. Sanofi-Aventis U.S. LLC,*
3:23-cv-9043 (C.D. Cal. Jan. 19, 2024) ...................................................... 11, 12, 13

*Ali v. Sanofi-aventis U.S. LLC*,
3:23-cv-02694-JSC, 2023 WL 6390592 (N.D. Cal. Sept. 29, 2023) ..................... 11

*Arizona v. California,*
460 U.S. 605 (1983) ................................................................................................. 7

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988) ................................................................................................. 7

*Colgate v. JUUL Labs, Inc.,*
345 F. Supp. 3d 1178 (N.D. Cal. 2018) ................................................................. 14

*DelGiorno v. Sanofi US Services Inc., et al.,*
2:23-cv-4264 (E.D. Pa. Jan. 29, 2024) ............................................................ 10, 12

*Dunn v. Sanofi US Services Inc., et al.,*
3:23-cv-00649 (M.D. Ala. Jan. 26, 2024) ..................................................... 10, 12, 13

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................................................................... 12

*Hart v. Sanofi US Services Inc., et al.*,
23-cv-2525 (M.D. Fla. Jan. 14, 2024) ................................................................... 11

*Jackson v. Sanofi-Aventis U.S. LLC, et al.*,
3:23-cv-00553 (M.D. Tenn. Jan. 29, 2024) ......................................... 10, 11, 12, 13

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) ............................................................................... 13

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................. 12

*Jones v. Am. Airlines, Inc.*,
2023 WL 8898577 (C.D. Cal. Oct. 30, 2023) ................................................. 13, 15

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994) ................................................................................. 14

*Martin v. Sanofi US Services Inc., et al.*,
No. 8:23-cv-02559 (M.D. Fla. Jan. 12, 2024) ............................................................ 11

*Maxwell v. Sanofi-Aventis U.S. LLC*,
2023 WL 7115575 (N.D. Ala. Oct. 27, 2023) ........................................................... 13

*Mims v. Sanofi-Aventis US LLC*,
No. 23-cv-24723 (N.D. Fla. Jan. 19, 2024) ......................................................... 11, 13

*Parks v. Ethicon, Inc.*,
2020 WL 6784543 (S.D. Cal. Nov. 18, 2020) ............................................................ 7

*Rasidescu v. Midland Credit Mgmt., Inc.*,
435 F. Supp. 2d 1090 (S.D. Cal. 2006) .................................................................... 14

*Smith v. Sanofi U.S. Servs. Inc., et al.*,
No. 23-22013-Civ-Scola (S.D. Fla. Aug. 1, 2023) ................................................... 13

*In re Taxotere (Docetaxel) Products Liability Litigation MDL*
(E.D. La., MDL No. 2740) ......................................................................................... 2

*White v. Novartis Pharms. Corp.*,
2010 WL 3448589 (E.D. Cal. Sept. 1, 2010) ............................................................. 7

**Other Authorites**

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3867 (4th ed., Apr.2023 Update) ........................................................................................................ , 7

Federal Rule of Civil Procedure 9 ................................................................... 1, 5, 14

Federal Rule of Civil Procedure 15 ................................................. 6, 10, 11, 12, 13

Federal Rule of Civil Procedure 16 .............................................................. 11, 12

# INTRODUCTION

Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. ("Defendants" or "Sanofi") request the Court deny Ms. Wells's Motion for Leave to File an Amended Complaint. Ms. Wells's untimely and highly prejudicial motion to amend her complaint is the latest in a string of attempts by Taxotere plaintiffs to undo years of litigation. To date, no plaintiff has succeeded. Every court to rule on such a motion has held for Sanofi, and the same result should follow in the case at bar.

*First*, Ms. Wells inexplicably requests an amendment identical to one the MDL court denied in 2019. Since this litigation began, Plaintiffs have defined their injury (permanent hair loss) as hair loss persisting six months after the completion of chemotherapy. When it became clear that many of the Plaintiffs' claims (including those of Ms. Wells) were facially time-barred under that definition, the MDL Plaintiffs moved to amend the Master Complaint so as to remove the six-month definition. Recognizing the proposed amendment as a naked attempt to game the statute-of-limitations analysis, the MDL court denied the request, holding plaintiffs could not abandon their injury definition (as Ms. Wells seeks to do here) without prejudicing Sanofi and undoing the MDL court's work. Ms. Wells fails to show that the MDL court's ruling was clearly erroneous or that it worked a manifest injustice. Under the law-of-the-case doctrine, this Court should do as other remand courts have done and leave the MDL court's ruling intact.

*Second*, Ms. Wells's motion does not explain why, despite being given the opportunity to do so by the MDL court, she never amended her Short Form Complaint to add allegations regarding fraud and the statute of limitations. As multiple courts have recognized, the deadline to plead those claims has long since expired. Ms. Wells should not be allowed to add the missing allegations now, years later.

*Third*, allowing Ms. Wells to amend would be futile. Even if her motion were granted, Ms. Wells' fraud claims still fail Rule 9(b)'s heightened pleading standard,

1

and her proposed amendments regarding punitive damages are not necessary under California law.

## LITIGATION BACKGROUND AND PRIOR RULINGS

As this Court is aware, before transfer, Ms. Wells's case was pending in the Eastern District of Louisiana as part of *In re Taxotere (Docetaxel) Prods. Liab. Litig.* (E.D. La., MDL No. 2740). *See* ECF No. 7 (Transfer Order) at 73–119 (summarizing the MDL proceedings).[1] There, the MDL court required plaintiffs to submit (1) a Master Complaint, which applied to all plaintiffs, and (2) a Short Form Complaint ("SFC"), which was to contain individualized allegations for each plaintiff. *Id.* at 74–75. The Master Complaint set forth the general facts and potential claims the plaintiffs asserted against the defendants and was incorporated by reference into each plaintiff's individual SFC. *See* ECF No. 1 (SFC) at 1. The SFC additionally allowed plaintiffs to (1) set forth any plaintiff-specific facts that were not alleged within the Master Complaint; (2) identify which causes of action each plaintiff incorporated by reference from the Master Complaint; and (3) identify any additional causes of action that were not set forth in the Master Complaint that the individual plaintiff sought to allege. *See generally* ECF No. 1 (SFC); *see also* ECF No. 7 (Transfer Order) at 74–75.

The MDL plaintiffs filed their original Master Complaint in the MDL on March 31, 2017 and, four months later, filed their First Amended Master Complaint "to name certain Defendants correctly." ECF No. 7 (Transfer Order) at 74; *see also* ECF No.

---

[1] The MDL court's Transfer Order (ECF No. 7) attaches a list of the cases remanded pursuant to the order as well as a copy of Case Management Order No. 39, which traces the history of the litigation and summarizes some of the MDL Court's major rulings. Citations to the Transfer Order refer to the continuously paginated document as a whole according to the page number at the bottom of the document (*i.e.*, pages 1–126).

2

1   6-4 (First Amended Master Long Form Complaint) at 133–200.[2]  On the MDL
2   defendants' motion, the MDL court dismissed the MDL plaintiffs' claims of strict
3   product liability for misrepresentation (Count II) and breach of express warranty
4   (Count VIII), finding the Master Complaint did not identify the representations or
5   warranties that were the subject of these claims.  ECF No. 7 (Transfer Order) at 74–
6   75.  The MDL court granted all plaintiffs two weeks to add those specified allegations
7   to their SFCs.  ECF No. 6-2 (PTO 61) at 120–21.

8        The MDL court, recognizing that the plaintiffs had not pleaded fraud with
9   particularly in the Master Complaint, also acknowledged the "limitations" associated
10  with pleading plaintiff-specific, fraud-based allegations within a Master Complaint,
11  and ruled *in 2017* that any allegations of fraud must be "perfected" within each
12  individual plaintiff's SFC.  *See* **Ex. 1**, Hr'g Tr., at 22:22–23:7 (Aug. 30, 2017)
13  (Engelhardt. J., presiding); ECF No. 7 (Transfer Order) at 75.

14       In September 2018, the MDL court allowed plaintiffs to file a Second Amended
15  Master Complaint, which was "identical" to the First Amended Master Complaint,
16  but added two defendants.  ECF No. 6-2 (PTO 82) at 150; *see also* ECF No. 6-4
17  (Second Amended Master Complaint) at 342–411.  Like the First Amended Master
18  Complaint, the Second Amended Master Complaint defined all plaintiffs' injuries as
19  "an absence of or incomplete hair regrowth **six months beyond the completion of**
20  **chemotherapy**."  ECF No. 6-4 (Second Am. Master Compl.) at 377 (¶ 181) (emphasis
21  added).

---

[2] The Joint Designation of Record accompanying this case's transfer is filed in the docket at ECF No. 6.  An index of the documents is provided in ECF No. 6 itself, while the record documents are split across multiple attachments.  For instance, Doc. 6-1 includes the MDL Court's transfer orders, while ECF No. 6-2 includes its pretrial orders, etc.  When citing a document in the Joint Designation of Record, Sanofi cites to the attachment number as shown in the docket and the page number of that document as continuously paginated.

3

|   |   |
|---|---|
| 1 | In 2019, the MDL plaintiffs requested leave to file a Third Amended Master |
| 2 | Complaint that would redefine their injury by eliminating the six-month timeframe. |

In 2019, the MDL plaintiffs requested leave to file a Third Amended Master Complaint that would redefine their injury by eliminating the six-month timeframe. *See* ECF No. 6-4 (Order Den. Pltfs.' Mot. to File Third Am. Master Compl.) at 1425–29. Specifically, the plaintiffs asked to remove the six-month injury definition and to instead allege "[t]here is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient." *Id.* at 1426.

The MDL court denied the plaintiffs' motion, finding their requested amendments would prejudice the defendants and undo the MDL court's work:

> If the Court were to allow Plaintiffs to amend at this late stage, this would negate a significant amount of the work that has been done in this MDL. Defendants would undoubtedly want to revise certain expert reports and conduct supplemental depositions, and certain rulings from the Court would be mooted.

*Id.* at 1428. The court also noted that the purpose of the proposed amendment was to attempt to save cases that would otherwise be barred by the statute of limitations, motivation the court rejected as a reason to abandon plaintiffs' long-standing injury definition. *Id.*

Shortly thereafter, individual plaintiffs attempted to achieve the same result by adopting the new injury definition into their SFCs. *See* ECF No. 6-4 (Order and Reasons) at 1430–31, 1433. The MDL court denied these requests for the same reason it denied plaintiffs' attempts to amend the Master Complaint. *See id.* at 1433. On May 11, 2020, the court followed up with PTO 105. That scheduling order gave the MDL plaintiffs 180 days to add allegations bearing on the statute of limitations to their SFCs, but it limited any amendments to "particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." ECF No. 6-2 (PTO 105) at 167. The parties then filed a stipulation extending the deadline until January 15, 2021. ECF

No. 6-2 (PTO Stipulation) at 169. The parties also agreed that, if any plaintiff sought to amend in a manner defendants believed was inconsistent with PTO 105, they would confer and place the case on a call docket "for Plaintiffs to show cause why Plaintiff's proposed allegations should not be stricken." *Id.* at 170.

Ms. Wells filed her Short Form Complaint on October 25, 2017. *See* ECF No. 1 (SFC). She included no details about her fraud claims and alleged no facts related to her alleged knowledge of her injury or her interactions with her doctors. *See id.* at ¶¶ 12, 13. She generically asserted claims for intentional infliction of emotional distress and punitive damages but did not allege any facts in support. *Id.*

As the MDL court recognized in its Transfer Order, "[a]ll deadlines for plaintiffs to amend their individual complaints without leave of court have passed." ECF No. 7 (Transfer Order) at 76. Ms. Wells's SFC and the Second Amended Master Complaint remain the operative pleadings in this case. *Id.* at 75.

## ARGUMENT AND AUTHORITIES

Ms. Wells's proposed amendments are improper for multiple reasons. As several courts have recognized, Ms. Wells's effort to redefine her injury is, in addition to being highly prejudicial, subject to the law-of-the-case doctrine.

Her remaining proposed amendments lack good cause and are untimely. The MDL court explicitly gave all Plaintiffs an opportunity to add case-specific allegations related to fraud and the statute of limitations, and remand courts agree that the deadline for doing so has long since passed. Ms. Wells should not be allowed to add the allegations years later simply because the case has been transferred.

Finally, the court should deny amendment with respect to Ms. Wells's fraud and punitive-damages claims for the additional reason that the proposed amendments are futile. Ms. Wells's fraud claims continue to lack the particularity required under Rule 9, and the additional punitive damages allegations are cumulative.

## I. ALLOWING MS. WELLS TO AMEND HER INJURY DEFINITION WOULD NEGATE THE MDL COURT'S WORK.

Like other plaintiffs who have moved to amend in this manner, Ms. Wells disguises her motion as an innocuous request to amend under Rule 15. It is not. In order to avoid dismissal of her claims as time-barred, Ms. Wells seeks to redefine her injury in a way that would fundamentally alter this litigation and severely prejudice Sanofi. Because the MDL court already considered and rejected her *exact request*, this Court should deny Ms. Wells's request under the law-of-the-case doctrine. No extraordinary circumstance exists that would warrant revisiting the MDL court's prior order denying an identical request to amend in the MDL.

### A. The MDL Court's Rulings Should Not Be Disturbed.

From this litigation's inception, the MDL plaintiffs' Master Complaint has defined their alleged injury—permanent chemotherapy induced alopecia—as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." ECF No. 6-4 (Master Compl.) at 38–39 (¶ 181); ECF No. 6-4 (First Am. Master Compl.) at 169 (¶ 180); ECF No. 6-4 (Second Am. Master Compl.) at 377 (¶ 181). In 2019, when the MDL plaintiffs proposed an amendment claiming "[t]here is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient," the MDL court rejected the request, ruling that allowing the amendment would undo the MDL court's work and prejudice Sanofi. *See* ECF No. 6-4 (Order Den. Pltfs.' Mot. to File Third Am. Master Compl.) at 1425–29. Despite the MDL court's ruling, Ms. Wells now seeks to abandon the long-established six-month definition and to instead allege the *identical*, vague language proposed and rejected in the MDL. *See* ECF No. 19-3 at 30 (¶ 102) ("There is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient."). Her request should once again be denied.

1    Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Although this Court has discretion to reconsider previous rulings, it "should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"  *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988) (citing *Arizona,* 460 U.S. at 618, n.8).

In the context of transfer from an MDL court, "exceptions to the law of the case principle should be especially rare . . . because refusal to follow the previous ruling would result in the sort of piecemeal decision making that MDL centralization is intended to avoid." Wright & Miller, 15 *Fed. Prac. & Proc. Juris*. § 3867 (4th ed., Apr. 2023 Update).  Federal courts in California have also recognized that revisiting rulings from an MDL court would defeat the purpose of multi-district litigation and work against the policies of judicial economy and finality.  *See White v. Novartis Pharms. Corp.*, 2010 WL 3448589, at *2 (E.D. Cal. Sept. 1, 2010) ("The whole purpose of MDL would be defeated if the trial judge after remand were to revisit the rulings of the MDL judge."); *Parks v. Ethicon, Inc.*, 2020 WL 6784543, at *5 (S.D. Cal. Nov. 18, 2020) ("The policies of judicial economy and finality warrant the application of the law of the case doctrine to MDL cases.").  There is no reason to reconsider the MDL Court's ruling here.

**B.    The MDL Court's Ruling Was Not Clearly Erroneous or Manifestly Unjust.**

In its ruling denying the amendment of plaintiffs' injury definition, the MDL court noted that the six-month injury definition had been in place since 2017 and was embraced by the MDL court when ruling on discovery disputes and on motions for summary judgment based on the statute of limitations, as well as by the parties' experts when rendering their opinions. *See* ECF No. 6-4 (Order Den. Pltfs.' Mot. to

7

File Third Am. Master Compl.) at 1427–29.  The MDL court recognized that the plaintiffs' request came long after the litigation was underway, having proceeded through "several rounds of dispositive briefing," various rulings, and the completion of the first bellwether trial (with discovery already closed for the second). *Id.* at 1427–28.  Allowing plaintiffs to abandon their injury definition in 2019 would "negate a significant amount of the work" done in the MDL, require the defendants to prepare a different defense based on the new injury definition (and result in revised expert reports and new expert depositions), and "moot[]" certain rulings from the MDL court. *Id.* at 1428.

The MDL court also laid bare the plaintiffs' motivations, finding it was "apparent that the main reason Plaintiffs wish to amend the [injury definition] at this juncture is to save cases that are otherwise subject to dismissal for being filed too late." *Id.*  The MDL court additionally ruled in a different order that plaintiffs could not avoid application of the statute of limitations "by being evasive in their Short Form Complaints about when their injuries occurred."  **Ex. 2**, *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2:16-md-02740-JTM-MBN (E.D. La. Jan. 23, 2020), DE 9915 at 4 (Order Den. Pltfs.' Mot. For Reconsideration).  Yet, that is exactly what Ms. Wells (again) attempts to do here.

As the MDL court acknowledged, experts on both sides referenced the six-month definition during the general discovery phase of the litigation—which took many years to complete—as well as during the two resulting jury trials.[3]  Sanofi's

---

[3] *See, e.g.,* **Ex. 3**, Glaspy Dep. (Jan. 18, 2019) at 103:1–13 (general testimony from Sanofi's oncologist); Miletello Dep. (Dec. 19, 2019) at 165:24–166:9 (general testimony from Sanofi's oncologist); Arrowsmith Rpt. (Dec. 31, 2018) at 48 (Sanofi's general regulatory expert); Turegano Dep. (Oct. 23, 2020) at 140:3–11 (general testimony from Sanofi's dermatologist); Wei Supp. Rpt. (De. 9, 2019) at 2–3 (Sanofi's general biostatistician expert); Smart Dep. (May 23, 2019) at 158:11–159:9 (general testimony from Sanofi's dermatologist); Tosti Dep. (Dec. 4, 2018) at 207:17–23 (general testimony from Plaintiffs' dermatologist); Plunkett Rpt. (Nov. 4,

1  witnesses, relying on the plaintiffs' injury definition, conducted analyses of clinical
2  trial data to determine which patients reported alopecia persisting after six months.[4]
3  Four days of trial preservation testimony for remand cases has also already been
4  conducted, with questioning anchored in the six-month injury definition.[5]  Another
5  court addressing this exact request recently recognized that "[a]dding new theories of
6  liability and new facts that change the framing of the case at this stage could require

---

2018) at 13 (Plaintiffs' general regulatory expert); Bosserman Dep. (Nov. 22, 2019) at 224:22–24 (general testimony from Plaintiffs' oncologist).

[4] *See* **Ex. 4**, Wei Supp. Rpt. (Dec. 9, 2019) at 2–3 ("By reviewing the same data set as Dr. Madigan, the vast majority of the 45 patients with ongoing alopecia in the TAX 316 study were followed for their alopecia for less than 6 months . . .  There were 4 patients in the FAC arm that have follow-up durations for alopecia longer than 6 months and 7 patients in the TAC arm that have follow-up durations for alopecia longer than 6 months. The other 34 patients have follow-up durations for alopecia of less than 6 months . . . When using the follow-up duration for alopecia, as identified in Figure A, there is also not statistical significance between the 7 TAC patients and the 4 FAC patients that have follow-up durations for alopecia longer than 6 months (RR 1.731, 95% confidence interval 0.509 - 5.889).") (Sanofi's general biostatistician expert); Love Rpt. (Dec. 16, 2019) at 33 ("Dr. Tosti rules out alopecia caused by Tamoxifen because patients have "normal regrowth" within 6 to 8 months after chemotherapy . . . .") (general testimony from Sanofi's dermatologist).

[5] *See, e.g*. **Ex. 5**, Madigan Tr. Preserv. (Nov. 14–15, 2022) at 247:5–15 ("Q. For these three reports that you say show some sort of signal by 2000, do you know if any of those reports actually involve patients reporting alopecia more than six months after finishing chemotherapy? A. I don't, because all I know is that there are three reports at that time in the FAERS database that have alopecia as a preferred term, that have the outcome -- that include Taxotere and have the outcome of permanent and disabled, that's what I know."); *id.* at 180:22–181:9, 248:11–249:11, 258:1–261:9, 278:20–279:11, 282:10–21, 289:1–290:10; Feigal Tr. Preserv. Dep. (Jan. 26–27, 2023) at 159:7-18 ("Q. So let's go to your report. Let's turn to page 36. And the section entitled 'B, Chemotherapy-induced Permanent, Irreversible Alopecia.' Do you see that?  A. Yes.  Q. Okay. And then it says -- I'll read: 'Permanent irreversible hair loss due to chemotherapy has been identified as an absence of or incomplete hair regrowth six months beyond completion of chemotherapy.' Did I read that correctly?  A. You read that correctly."); *id*. at 159:19–160:10, 243:18–244:10, 301:1–304:12, 310:5–311:17, 316:14–317:12, 318:18–326:18.

1  Defendants to engage in additional, and possibly duplicative, discovery, and would
2  necessitate a lengthier and more complicated trial." *DelGiorno v. Sanofi US Servs.*
3  *Inc.*, No. 23-CV-04264, 2024 WL 329928, at *2 (E.D. Pa. Jan. 29, 2024).  Should
4  Ms. Wells be permitted to change her injury definition now, general expert discovery
5  would have to be reopened, new expert analyses conducted, general causation and
6  *Daubert* briefing redone, and trial preservation testimony retaken.  *See id.*

7  Ms. Wells brushes aside the prejudicial nature of her request, generically
8  claiming Sanofi will suffer no prejudice because she is merely attempting to conform
9  her pleadings to the evidence. ECF No. 19-1 at 6.  That assertion is false. The general
10 case discovery, general expert discovery, dispositive motion rulings, pre-trial rulings,
11 and trial verdicts emanating from the MDL have all been framed by the allegations
12 made in the Second Amended Master Complaint, including the six-month injury
13 definition.  If Ms. Wells were allowed to amend now, that work would become
14 meaningless.  The Fifth Circuit's persuasive guidance on application of the statute of
15 limitations under the six-month definition would become irrelevant, and countless
16 other disputes of fact and law would necessitate further litigation.  In effect, the
17 litigation (at least with respect to Ms. Wells's claims) would need to begin anew.  Yet
18 Ms. Wells has not offered a single reason why such an extraordinary result should
19 follow.  The MDL court's ruling was not clearly erroneous or manifestly unjust.[6]  Ms.
20 Wells's renewed request to fundamentally alter this litigation and undo the MDL
21 court's rulings by changing the injury definition should be denied.  Courts in other

---

[6] *See, e.g.,* **Ex. 6**, *Jackson v. Sanofi-Aventis U.S. LLC, et al.*, 3:23-cv-00553 (M.D. Tenn. Jan. 29, 2024), at 13 (denying Plaintiff's motion to amend when she "failed to demonstrate that the MDL Court's ruling in PTO No. 105 was either clearly erroneous or would work a manifest injustice."); *Dunn v. Sanofi-Aventis U.S. LLC*, No. 3:23-CV-649-ECM, 2024 WL 314039, at *9 (M.D. Ala. Jan. 26, 2024) (". . .Plaintiff has failed to explain the clear error in the MDL Court's Rule 15 analysis.  The Court agrees with the Defendants that the MCL Court's orders should not be disturbed.").

jurisdictions considering identical requests have uniformly rejected them.[7]

## II. AMENDMENT SHOULD NOT BE PERMITTED UNDER EITHER RULE 15 OR RULE 16.

Ms. Wells additionally seeks to add new allegations in support of her fraud claims and in an attempt to argue her claims were timely filed, just as other Taxotere plaintiffs have attempted to do post-transfer out of the MDL. To date, all such requests have been rejected, with courts around the country recognizing that plaintiffs could not show good cause under Rule 16 and/or amendments were previously allowed but now unreasonably delayed under Rule 15. The same is true here.

In 2020, the MDL court issued PTO 105 and gave all plaintiffs until January 15, 2021, to amend their SFCs to assert specific facts aimed at tolling the statute of limitations. The same deadline was set for any plaintiff seeking to amend in a manner inconsistent with PTO 105 to place their case on a call docket to show cause why amendment should not be stricken. Under 16(b), "good cause" is required to modify

---

[7] *See* **Ex. 7,** *Martin v. Sanofi US Services Inc., et al.*, 8:23-cv-02559 (M.D. Fla. Jan. 12, 2024) (denying motion for leave to amend the complaint because "the requested amendment would unduly prejudice Defendants and would undermine the rulings already made by the MDL Court," which "already considered and rejected the request to amend to alter the injury definition in 2019"); **Ex. 8,** *Hart v. Sanofi S.A., et al.*, 8:23-cv-02525 (M.D. Fla. Jan. 17, 2024) (same); **Ex. 9**, *Mims v. Sanofi-Aventis US LLC*, 23-cv-24723 (N.D. Fla. Jan. 19, 2024), at 3 (finding that the plaintiff's proposed amendments would "unduly prejudice Defendants and would undermine the rulings already made by the MDL Court"); **Ex. 7**, *Jackson*, at 21 ("Just as the MDL Court found that allowing the MDL plaintiffs to amend the injury definition would prejudice Defendants, this Court also finds that allowing Plaintiffs to amend the injury definition would likewise prejudice Defendants"); **Ex. 10**, *Anderson v. Sanofi-Aventis U.S. LLC*, 23-cv-9043 (C.D. Cal. Jan. 19, 2024), at 4 (finding "no reason to depart from the MDL court's conclusion that the amendment she seeks would be unduly prejudicial to Defendants."). *See also Ali v. Sanofi-aventis U.S. LLC,* 3:23-CV-02694-JSC, 2023 WL 6390592, at *3 n.1 (N.D. Cal. Sept. 29, 2023) (granting summary judgment and rejecting injury-definition amendment because "the MDL court denied Plaintiffs' request for leave to amend their Long-Form Complaint in exactly this way").

a scheduling order like PTO 105. Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992); *see also* **Ex. 6**, *Jackson*, at 11–12 (finding PTO 105 "set a schedule for the MDL plaintiffs to file their motions to amend[,]" making it a scheduling order subject to Rule 16(b)'s heightened "good cause" standard.).

Only diligent efforts to comply with a scheduling order can satisfy Rule 16's good cause standard. *See Johnson*, 975 F.2d at 609 ("The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.") (internal quotations omitted)). Here, Ms. Wells neither moved to amend nor sought to place her case on a call docket by the January 15, 2021 deadline; yet, now three years later seeks to add allegations related to the timeline of her treatment and interactions with her doctors.[8] *See* ECF No. 19-3 at 46–47 (¶¶ 156–165). Ms. Wells has not proven (or even argued) good cause, and cannot argue diligence, as the record shows she made no attempt to amend her SFC since she filed it nearly six years ago. Ms. Wells's proposed amendments should be denied for lack of good cause under Rule 16.

Ms. Wells' requests must also be rejected under Rule 15 due to "undue delay" and "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In ruling on Defendants' Motion to Dismiss the First Amended Master Complaint in 2017, the MDL court recognized the "limitations" associated with formulating fraud-based claims in a Master Complaint. *See* **Ex. 1**, Hr'g Tr., at 22:22-23:7 (Aug. 30, 2017) (Engelhardt. J., presiding). While the MDL court did not dismiss fraud-based counts from the MDL entirely at that time,

---

[8] As other courts ruling on MDL plaintiffs' motions to amend have noted, "these are precisely the kind of facts contemplated by PTO 105," that should have been added by the 2021 deadline. **Ex. 10**, *Anderson*, at 5 (rejecting plaintiff's identical stipulation argument); *see also Dunn*, 2024 WL 314039, at *8; **Ex. 6**, *Jackson*, at 18; *DelGiorno*, 2024 WL 329928, at *2–3.

it ruled (more than six years ago) that any allegations of fraud must be "perfected within the short form complaints filed in the individual member cases." *See* ECF No. 7 (Transfer Order) at 75. Ms. Wells never added any such allegations to her SFC, and her current, unexplained request to correct that failure is unduly delayed. Other courts agree that similar requests to add both fraud and timeliness allegations should be denied under Rule 15 because the time for Taxotere plaintiffs to amend their complaints has passed.[9]

### III. ALLOWING AMENDMENT WOULD BE FUTILE.

This Court may also deny a motion to amend when the amendment would be futile. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can justify the denial of a motion to amend."). This includes when a plaintiff's proposed amendments do nothing to change the substance of a claim or otherwise serve no legitimate purpose. *Jones v. Am. Airlines, Inc.*, 2023 WL 8898577, at *3 (C.D. Cal. Oct. 30, 2023). Because Ms. Wells's fraud claims remain insufficiently pleaded, and because Ms. Wells already incorporates the punitive damages allegations of the MDL

---

[9] *See* **Ex. 9**, *Mims*, at 3 ("The time for amendment of specific complaints has long passed."); **Ex. 11**, *Smith v. Sanofi U.S. Services Inc., et al.*, 23-22013-Civ-Scola (S.D. Fla. Aug. 1, 2023), Scheduling Order and Order of Referral to Mediation at 1, n. 1 ("Plaintiff has already been afforded the opportunity to amend her complaint within the multidistrict litigation and the deadline set by that court to amend the pleadings has long since passed."); **Ex. 10**, *Anderson*, at 5 (denying the plaintiff's request to amend the pleadings, in part, because she "failed to avail herself of the opportunity to add such allegations years ago, when amendment would have been timely."); **Ex. 6**, *Jackson*, at 15 (holding that "the deadline for the amendments that Plaintiffs seek to make – (1) general case specific facts, (2) exemplary damages, and (3) a discovery date – has passed."); *Dunn*, 2024 WL 314039, at *9 (holding that the Plaintiff engaged in undue delay in filing her motion."); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-CV-696-ACA, 2023 WL 7115575, at *2 (N.D. Ala. Oct. 27, 2023) (granting motion for judgment on the pleadings and finding fraud claims insufficiently pled, noting the deadline to amend short form complaints to add particularized fraud allegations had expired). In other cases, the parties have stipulated that the time to amend has passed or the issue was agreed.

13

Second Amended Master Complaint, her proposed amendments are futile and should be denied.

Ms. Wells asserts four fraud-based claims: negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. ECF No. 1 at ¶ 13. To plead fraud, Ms. Wells must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The plaintiff must "state precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud." *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1095 (S.D. Cal. 2006) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)).

In ruling that fraud claims needed to be perfected in the SFCs, the MDL court inherently recognized that the fraud allegations contained in the Master Complaint did not satisfy Rule 9(b) because they were, by their nature, generic and not specific to any particular plaintiff. If pleaded in an SFC, a plaintiff could add the plaintiff-specific details the law requires. *See generally* ECF No. 1. Ms. Wells never included such allegations in her SFC. *Id.* And even now, Ms. Wells's proposed amendments do not add any of the detailed, plaintiff-specific information the MDL court recognized should be added in order to plead fraud adequately, but instead merely repeat the same generic allegations found in the Master Complaint. *Compare* Doc. 19-3 (Ms. Wells's proposed Complaint) at 56–68 *with* ECF No. 6-4 (Second Am. Master Compl.) at 389–405. These generic allegations do not specify the contents of the supposed misrepresentations or whether Ms. Wells was even aware of them. *See, e.g.*, ECF No. 19-3 at 62 (¶ 227) (alleging that Defendants "represented that hair loss from Taxotere was temporary in nature" but failing to layout the contents of that statement or when and how Ms. Wells heard it). This is not enough to satisfy Rule 9. *See Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1191 (N.D. Cal. 2018) ("Plaintiffs have failed to specifically identify what the advertisements they saw and,

as a result, neither I nor JUUL can determine precisely what statements were allegedly false, misleading, or unfair.").

Ms. Wells's proposed punitive damages amendments should also be denied as futile. Ms. Wells already alleged punitive damages in her SFC and already incorporates the punitive damages allegations of the Second Amended Master Complaint into her SFC. *See* ECF No. 1 (SFC) at 1 (incorporating the Second Amended Master Complaint). In her motion, Ms. Wells does not explain why amending to add more allegations of punitive damages is necessary to state a claim for punitive damages in federal court at this stage of the litigation. Indeed, in her proposed amended complaint, Ms. Wells simply adds more generic allegations that could have been asserted in the MDL. *See* ECF No. 19-3 at 68–74 (¶¶ 254–278). This Court should deny Ms. Wells's proposed punitive damages allegations because they do not materially change her claim. *See Jones*, 2023 WL 8898577, at *3 (denying plaintiff's motion to amend because the proposed allegations did not materially change any claims). Because amendment would be futile, this Court should deny Ms. Wells's motion.

## CONCLUSION

For these reasons and the arguments and facts set out above, this Court should deny Ms. Wells's motion.

Dated: February 8, 2024                    Respectfully Submitted,

                                                                SHOOK, HARDY & BACON, L.L.P.

                                                                By: */s/ Eva M. Weiler*

                                                                    Eva M. Weiler

                                                                Attorney for Defendants
                                                                sanofi-aventis U.S. LLC and
                                                                Sanofi US Services Inc.

# TOC OF EXHIBITS

**EXHIBIT NUMBER**                                                                                          **PAGE**

EXHIBIT 1
   Hearing Transcript, at 22:22–23:7 (Aug. 30, 2017) (Engelhardt. J.,
   presiding) ......................................................................................................... 3, 12

EXHIBIT 2
   *In re Taxotere (Docetaxel) Products Liability Litigation MDL,* 2:16-md-
   02740-JTM-MBN (E.D. La. Jan. 23, 2020), DE 9915 at 4, ......................................... 8

EXHIBIT 3
   Glaspy Dep. (Jan. 18, 2019) at 103:1–13........................................................................ 8

EXHIBIT 4
   Wei Supp. Rpt. (Dec. 9, 2019) at 2-3.......................................................................... 8, 9

EXHIBIT 5
   Madigan Tr. Preserv. (Nov. 14–15, 2022) at 247:5–15 .................................................. 9

EXHIBIT 6
   *Jackson v. Sanofi-Aventis U.S. LLC, et al.*,
   3:23-cv-00553 (M.D. Tenn. Jan. 29, 2024) ............................................. 10, 11, 12, 13

EXHIBIT 7
   *Martin v. Sanofi US Services Inc., et al.*,
   No. 8:23-cv-02559 (M.D. Fla. Jan. 12, 2024)............................................................. 11

EXHIBIT 8
   *Hart v. Sanofi US Services Inc., et al.*,
   23-cv-2525 (M.D. Fla. Jan. 14, 2024).......................................................................... 11

EXHIBIT 9
   *Mims v. Sanofi-Aventis US LLC*,
   No. 23-cv-24723 (N.D. Fla. Jan. 19, 2024) .......................................................... 11, 13

EXHIBIT 10
   *Anderson v. Sanofi-Aventis U.S. LLC,*
   23-cv-9043 (C.D. Cal. Jan. 19, 2024) ............................................................. 11, 12, 13

EXHIBIT 11
   *Smith v. Sanofi U.S. Servs. Inc., et al.*,
   No. 23-22013-Civ-Scola (S.D. Fla. Aug. 1, 2023) ...................................................... 13